Final matter is State Auto vs. PRODesign I apologize to the court that this case does not offer any really intriguing issue of law as the previous cases, but it is a serious issue. It is a single issue, Your Honor. You are reading our minds, at least my mind. It is a single issue, Your Honor. Not exactly the jurisprudential equivalent of Edgar Allan Poe. Your Honor, as you well know, this is a situation where an insurance policy was issued to an insured that had a single vehicle on the policy at its inception and several vehicles were added later on. We've had to read Sackett 1 and 2. At least I have. Aren't they a model of clarity and precision? It gives me something to shoot for. I even read Byrd, which is the New Mexico case cited in Sackett 2. I went back and I read Sackett 2 again. I said, why the heck did they cite Byrd? I'm so not sure why they cited Byrd. If you're asking me that question, Your Honor, I think I can tell you. Just having fun with the people that were going to read the cases? I think so. Okay. What Your Honors are posed with here is predicting how the Pennsylvania Supreme Court will likely rule in the future on this. Another fascinating enterprise. And I think, Your Honors, after you cut through all of what has been presented in the briefs, the one thing that should guide you in making that prediction is what the Pennsylvania Supreme Court ultimately did in Sackett 2. And what they did in Sackett 2. We're going to have new justices on that court, though. Pardon, Your Honor? There's going to be a new composition of that court. Yes, but Justice Castile, who was initially the dissenter in Sackett 1, and then a concurring opinion in Sackett 2, is now Chief Justice. That may also give you an idea where that's at. Maybe we should certify it to the court. That is probably not a bad idea. But I think Your Honors have the capability of deciding this on the merits. We have not had a stellar record in getting our certifications accepted. It's like betting practice. It's not like Harriet Kaye. It wasn't out of here. Mr. Duffy, you needed that print when I just said. Your Honors, I forgot to mention. You're allowed to, certainly. Your Honors, I apologize. I forgot to mention that I would like to have reserved rebuttal time. Five minutes, please. This is not a multi-vehicle policy. No, it is not, Your Honor. But there is an after-acquired vehicle clause. That is correct. What effect do those two things have, if any? This is where you should look to find out that effect. What the court did in Sackett 2 was in interpreting Section 1738 of the Motor Vehicle Code, which gives substantial deference to the interpretation of the Motor Vehicle Code,  The problem, though, is the language of that after-acquired vehicle clause. I read that almost three times. I read Sackett 1 and 2. Well, what can Mr. Dillman waive here at the time? At the time of the inception of the policy? At the time of the inception of the policy, he can waive inter-policy stacking, but there is no inter-policy stacking at that point. In this case? In this case. But the form that he signs says, I do waive stacking of coverage for any vehicles covered under this policy. And the policy does contemplate the potential addition of vehicles in the future. Therefore, Mr. Dillman knows, and at that point, that should he add vehicles, he has a stacking waiver in effect. But then doesn't that turn on the interpretation, one, the interpretation of the after-acquired vehicle clause, and the reasonable expectation of the insured? Well, and what is this? Which the Court doesn't mention. And they don't mention that in the statute. The reasonable expectation of the insured in this situation where he has signed a form mandated by the legislature that he is waive stacking. That's his expectation, period. For your prognostication of how the Pennsylvania Supreme Court may rule in this case, you should also give substantial deference to the insurance commissioner and the Department of Insurance. And the position they provided to the Court in Sackett, too, is appended to the amicus brief of the Pennsylvania Research Institute, and in full. And what the court, the insurance commissioner, has approved for over 17 years now is simply this. An insured applies for a policy of insurance. That is the, quote, purchase, end of quote, that occurs as contemplated by Section 1738. If there is this after-acquired vehicle clause, the addition of vehicles thereafter is not a purchase. And this applies. Well, that's what I'm not so sure. Well, this is the scheme. That's the crux of it. This is the scheme that the insurance commissioner and the Department of Insurance has approved for over 18 years. If you look at the language of the cases, they seem to be saying that the acquisition of an after-acquired vehicle is not just the addition of more insurance, but the purchase of. That's one of the reasons I had such problems with Sackett. Well, that's because Sackett deferred to the insurance commissioner. And according to the insurance commissioner, the scheme that the Department of Insurance has approved for more than 18 years now is that at the inception of the policy, you either sign the waiver or you don't, whether it's a single-vehicle policy or a multi-vehicle policy. And thereafter, if you have signed the waiver, whether it's a single-vehicle policy or a multi-vehicle policy, no new waiver is required if a vehicle is added on. And that's set forth in the submission of the insurance department. Page 7 of their submission, the department enforces the motor vehicle financial responsibilities law requirement that as a precondition for an auto insurer to issue a policy with unstacked UMUIM coverage, the insurer must first obtain a written waiver from the policyholder. However, once the policy is in place, the department has not required a company to issue or a policyholder to execute an additional waiver whenever a vehicle is added to the policy to reaffirm that the policy remains unstacked. This is because under the department's interpretation and implementation of Section 1738, once unstacked coverage is chosen and a policy issued on that basis, the mere subsequent addition of a vehicle, parentheses, and add-on, end of parentheses, to the policy, is not, quote, the new purchase of coverage, end of quote, that would require a new waiver under Section 1738. No new waiver is necessary because the policyholder has already decided that the policy is to be issued on an unstacked basis, and any subsequently added vehicle enjoys the coverage already present in the existing policy. But in SACIT 1, now it's somewhat confused because SACIT 2 obviously attempted to limit SACIT 1, but in SACIT 1, I'm not sure the limitation language in SACIT 2 goes to this part of SACIT 1. In SACIT 1 at 430, the court said, today's holding requires what the plain language of the statute states. When an existing insured purchases uninsured or underinsured coverage for more than one vehicle under a policy, the named insured must be provided with the opportunity to waive stacking of that coverage. Despite what APPLI suggests, today's holding does not extend to circumstances where an existing named insured simply replaces a vehicle, which is not our case or renews an existing policy. And that's why SACIT 2 is a radical change from the holding in SACIT 1. Although it purports to clarify that it actually is a radical change in the holding. Because SACIT 2 adopts the insurance commissioner's position on this, and the insurance commissioner's position with respect to our factual. That's the whole basis of the change. Moving from what they at least billed as a plain text or plain reading basis in SACIT 1 to pretty much a policy-based determination and based entirely on the reasoning provided to them by the insurance commissioner. That's precisely correct, Your Honor. The court says then, I guess this is what the crux of it, in SACIT 2, thus we clarify that SACIT 1 does not preclude the enforcement of an initial waiver of stacked UMUIM relative to coverage extended under and after acquired vehicle provision of an existing multi-vehicle policy. We have a single-vehicle policy. We don't have a multi-vehicle policy. But the insurance commissioner does the same thing with single-vehicle policies. And that's what's set out in the appendix. And what happens if you have a single-vehicle policy ab initio, if the original policy is unstacked and there is no new waiver until the new vehicle, the company then sends the waiver form and the form is returned. That's also from the insurance commissioner's presentation in SACIT 2. For this to be a multi-vehicle policy, really the only functional difference is it would cover more than one car. Is that right? Correct. Maybe some language would change a little bit, but nothing significant. Nothing significant changes. That's correct, Your Honor. Is there any problem with waiving coverage for a vehicle you don't own yet? It is, in fact, contemplated in the policy and approved by the insurance commission for the last 18 years. In that sense, it's no problem because it's a recognized practice sanctioned for a long period of time. Shouldn't the clause in the policy be clearer? It made me want to go back and look at my policy. I was afraid it might have the same language. That after-acquired vehicle policy is, frankly, a mess. I mean, it is. It's like 1 of column A, column 2 of 7 appears in column 1. Shouldn't I just say it? My time is up, Your Honor. Should I answer that question? Yeah. It is still of the type of after-acquired vehicle clause that does not cut off the additional coverage in a very finite set period of time. It lets the vehicle be added on to the policy and subject to renewal later on, so long as the extra premium is paid if charged. So that is the distinction that was set up in SACIT 2 by the court. We have these two types. One is very finite, one that adds on and it's renewed through the length of the policy. And no matter the rough wording of the policy in question, it's still that second type. It still adds on a vehicle that upon renewal the coverage extends and it takes some substantial step to change it. Thank you, Your Honor. You did reserve some time. It would be nice to get back to the old days where you just, if you can't understand the contract, you can stew it against the person who wrote it or the entity that wrote it. And SACIT clearly didn't do that. Good morning, Your Honors. Good morning. John Kasturis and I represent PRO Design here. In this case, I would argue that SACIT 1 does in fact apply and that SACIT 2 carved out an exception to SACIT 1. SACIT 2 applies only to multi-vehicle policies. You're right. But what about Mr. Delia's argument is, look, the insurance commissioner does the same thing for both kinds of policies. The Pennsylvania Supreme Court has clearly, I won't say ceded control of this area to the insurance commissioner, but they look to the insurance commissioner for guidance in applying the statute to the policy. If the commissioner does the same thing in both single and multi-vehicles, what difference would it make? Taking that a step further, then I think we have to look at SACIT 2 for guidance as to how they would deal with the single-vehicle policy. If you were to say that it's going to be the same type of ruling, then we have to look at the after-acquired vehicle clause, as Your Honors done and I've done many times. Can you figure it out? I'm trying. But what sticks out every time I read it is the phrase policy period. And the policy period in this policy is clearly defined. It goes for one year from June to May or July to June. It covers that specific year. And if you look at the policy. It is being renewed. Isn't it pretty much automatically? But that's the policy period. And the after-acquired vehicle clause you have to read, I suggest, as a whole. And it talks about, number one, if symbols that Your Honor referred to one through six are entered, then you have this policy covering the remainder of the policy period. But if symbol seven, then you have to tell us within 30 days, and I suggest that you read in there. It covers for the policy period. The policy period is that one-year period. This policy was renewed for six times. So there were six separate periods. Six separate periods, correct. So, therefore, with the new policy period, the insurance company had to have Mr. Dillman, on behalf of ProDesign, sign a waiver of stacking when the policy went from a single-vehicle policy to a multi-vehicle policy. What's your best authority for that interpretation of the policy? The best authority... Other than Clusterus on automobile insurance in Pennsylvania. That would be an administrative nightmare, wouldn't it? Most people renew their policies very simply. They wouldn't be executing waivers each time. Well, we're talking about a specific single-vehicle policy that has turned into a multi-vehicle policy. We're not talking about each time the multi-vehicle policy would renew, but I would suggest that regarding this policy in 2004, when it went from single to multi-vehicle, one time they would need to have that waiver signed. It would then have applied into the future, but they did need it signed the one time. Because if you go back to 2001, you're having Mr. Dillman, on behalf of ProDesign, sign a waiver that didn't apply, if that's what you're saying. He knew what he was waiving. At the time he bought the first car and entered into the policy of insurance, he knew exactly what he was waiving. He knew exactly what the dollar amounts of the waiver per vehicle would be. Which was for the inter-policy waiver, but not regarding intra-policy waiving because there was only one vehicle. But he knew if any additional vehicles were required. You do the simple math and you know exactly the amount of stacking that you're waiving. You don't have to have a car in hand to know the amount of coverage you're giving up if you waive stacking on that second hypothetical car that you may acquire in the future. I would suggest that the legislature requested specific language for waivers so that your waiver is knowing. But that's my question. Why isn't it knowing? I know that I elect $35,000 worth of coverage for uninsured or underinsured coverage on this car A. I know that down the road, if I stay with the same company, and they don't change the terms of my policy, if I buy three cars, I have waived three times $35,000 for the coverage. If I buy ten cars, I've waived ten times $35,000 stacking. I know exactly what I've waived. Because the waiver here goes to the interpolicy. You don't know what, if anything, you're saving on interpolicy waivers. Because you don't have the car, so you don't know what the coverage would be. No, but you know the moment you get the car, the insurance coverage on that, if you sign this waiver, you're giving up the same amount of coverage on that second car that you did on the first car and the third and fourth. You know exactly what you're giving up. The multiples of the same coverage that you have in the first policy. The multiple is the number of cars added on to the first car. And I'm not good at math, but I can figure that out. It's a lot simpler than the after acquired vehicle clause is. Well, I would suggest that the Pennsylvania Supreme Court is looking at that after acquired vehicle clause because they're looking at the language in the Act which is talking about the purchase of additional coverage. And clearly, in this particular case, when you're going from a single vehicle policy to a multi-vehicle policy, you are purchasing additional coverage. It's not a multi-vehicle to multi-vehicle. It's changing that policy. It's changing the whole idea of stacking. It's changing what the understanding of the insured would be. And therefore, they need to clarify that by way of having that new waiver signed. Well, we'd be happy to have it clarified. The issue is whether or not they have to do that. It sure would be helpful. How about cost containment? Is that something we should also take into account? I think that was taken into account between SACA 1 and SACA 2 when they went to looking at the after acquired vehicle clause. You know, one of the big issues was overnight, do these policies turn into stacking policies? And the insurance company doesn't have the benefit of some time to either get a new waiver signed or to make adjustments to premiums. But isn't cost containment a prime reason or prime part of the rationale in SACA 2? It is, which is why they went with the after acquired vehicle clause, which gives both the insurance company and the insured time within that after acquired vehicle clause time period to make that election, whether to turn this into a stacked policy or keep it an unstacked policy. So I would say if we looked at the after acquired vehicle clause and went with the policy period, it fits within that cost containment argument because had this collision occurred in 2004 during the policy period when the first vehicle was added, I may have more difficulty arguing before you that it should be an unstacked or a stacked policy. But since that policy period has come and gone, there was sufficient time for the insurance company to now go to Mr. Dillman and say, are you going to keep this unstacked or do you want it to be stacked? Because now you've gone to a multi-vehicle policy and stacking is available to you. Well, Mr. Dillman is going to say they already went to him. They went to him when he got his first policy. They went to him then and he made a decision which he knew was going to apply not only to car A, but B, C, D, and E. But they already went to him. And why should they have to go to him a second time, a third time, a fourth time, a fifth time, especially given what the screams have said about cost containment? Well, once again, I would argue that it's changing this policy. That first waiver was for inter-policy stacking, and clearly there have been many cases that have discussed the distinction between inter-policy and intra-policy. There is a difference. And when this goes from a single to a multi-vehicle, it becomes the intra-policy stacking issue, and that's what has to be addressed. You're arguing that had the Court meant what Mr. Dillman is saying, they would not have used such a discrete and limiting language in SACA 2 to say how they were distinguishing 1 and 2. Correct. Thank you very much. Can I ask your name again, sir? Is it Kusturis? It's Kusturis. Mr. Kusturis. Yes. Do you have relatives practicing law in western Pennsylvania? I do, Judge. In fact, I did try a case before you. I think it was 89 or 90. How do you do? How does a judge do? He did well. He did well as an automobile case. Have I learned anything? Sitting back here, I would say you've done very well. You've learned a lot, right? You could take the Fifth Amendment if you wanted to. But, you know, that's the one that you start beating your wife kind of question, have I learned anything? If you say yes, what a dummy you were before. I'm surprised Judge McKee didn't answer that question for me, actually. I think some questions answer themselves. I would assume that you don't have any relatives practicing in Altoona, though. He just said western Pennsylvania. Pittsburgh and Washington County. Because I'm not sure. Are there lawyers in Altoona? Not since I left. They'll have lawyers again tomorrow afternoon, I guess. If it pleases the Court, my name is Mitchell Clare. I am here on behalf of the Pennsylvania Association for Justice as a friend of the Court. And preliminarily, I think that the setting should be okay here, but I do not hear from this ear, so if for some reason I'm looking this way and I don't hear you, Judge Smith, you'll understand. You're the better for it, Mr. Clare. Excuse me? You're the better for it, Mr. Clare. I also have a hard time hearing if I'm speaking and you're speaking. You don't realize how much you switch from one ear to the other. I can't wait to sit down in a conference with these two guys. Well, it's good that you're having a good time. So let's talk about. It's our last case of the entire week sitting. That's kind of all we need to get our lives back. You know, the thing that you didn't hear from Mr. Daley is he never talked about policy period. When you look at SACT II, okay, and you talk the Court was very specific in how it was limiting SACT I, and it really said it very specifically. It said, to the degree that coverage under a particular after-acquired vehicle provision continues in effect throughout the existing policy period subject only to conditions subsequent such as notice and the payment of premiums, we clarify that SACT I should not disturb the effect of an initial U.M., U.I.M. stacking waiver obtained in connection with a multi-vehicle policy. Okay? It's very clear. It's during that period. So in other words, if, you know, you buy, you have two vehicles on a policy because we're not even up to whether or not SACT II applies to a single vehicle. Say you have a two-vehicle policy and you add two more vehicles and you have a stacking waiver, okay, during that policy period. And a policy period is a very specific thing. It's, if you look at the record, you'll see, you know, where the, where plaintiff has attached, appellant has attached, each and every declarations page, you'll see there it says policy period. It's very specific. It's a one-year period. Because each, the terms remain the same. The cars, number of cars change. Terms remain the same. So the period changes, but it incorporates within it the terms of the insurance policy for that period. For that period of time. So it exists. So if you take, like, if you have two cars and you add two more, okay, now you have four cars and there's a stacking waiver, that stacking waiver continues for that policy period. In this case, the policy periods ended on June 6th. So how does that help you? Excuse me? How does that help you? You're saying when you have a renewal? You're saying when there's a renewal? When there's a renewal, that's when they have to get the new waiver, if you've added vehicles. That's what SACIT 1 stands for. And that's what SACIT 2 protects against, is that period during the policy period where all of a sudden the insurance company doesn't have control or can't properly rate because of this period of time when a new policy is added and they haven't gotten new stacking waivers. Original period, renewal. You're saying I have to get a waiver now with the first renewal. Correct. How about the second renewal? Do I have to get it again in the third renewal? No. Well, only if you add vehicles. Only if you add vehicles at each renewal. If there's a new vehicle, an additional, not a substitute vehicle, but an additional vehicle, then you do. And that's what SACIT. No, no. I have one vehicle here. Now I added a vehicle. Now I've got the next period. You're saying at this point I've got to get the waiver. The insurance company has to get a second waiver. That's what SACIT 1 says. One third renewal. Do I have to get it again? Have you added new vehicles? No, I haven't got any. Then you don't. Okay. Then you don't. But because you're not, you've already waived the proper amount of coverage. But in this case, and then. What is it? Are you referring to a language? I think we read the same language in SACIT 2. There are two sections in SACIT 2. One that I mentioned before where they say how they're limiting SACIT 1. And then there's some additional language, I guess over around 20, where they talk about 20 of Pennsylvania reports of how they're limiting it. What language specifically are you saying gets you the interpretation of SACIT 1? I think there's two ways that SACIT 2 helps us. I think the first way is that it's limited to the policy period, what I had read to you. And then the second one is that SACIT 2 says it doesn't apply to single vehicle policies in which there's then a later that then become multiple vehicle policies. But it doesn't say. They didn't say that it applies only to a certain kind of policy. They said it doesn't apply. SACIT 1 didn't apply to certain classic policies. It does not say. I think you're asking us to read it as though they said it only applies to certain kinds of policies. That's the way I read it. Yes, that is the way I read it, is that. That's the way you have to read it. Is that SACIT 2 applies only to multiple vehicle policies to multiple vehicle policies. Yes, that's the way you have to read it. So on both of those bases, I think that we get to that point. Well, given what the Supreme Court has done, though, and we talked about it earlier, the way they look to what the commissioner has done in these kinds of policies to try to get a handle, I guess, on either the appropriate interpretation of the statute or just to conform law with practice, how would we predict what you're asking us to predict? I think that we are right in line. I mean, SACIT 2 is very specific. It's limited to the policy period. Okay? So we're in a new policy period. Because we're in a new policy period. But the big thing that happened in between SACIT 1 and SACIT 2 is the insurance commissioner said, Wait a minute. This isn't what we do. This doesn't make sense. Yeah, it wasn't a policy period. And that's exactly right. And so the court said, Okay, you're right. So we're going to balance those two things. Now you're protected for your policy period. Shouldn't we look at what the commissioner is saying here? No. We should look at what the court says. We really should. And they're not the same. And they're not the same thing. The commissioner has said he doesn't care if it's a multi-vehicle policy or not. He's going to apply the same rule. Shouldn't we give some weight to that? I wish I had the case in front of me. The last time the Supreme Court commented on the insurance commissioner and his relationship to the motor vehicle financial responsibility law, it was to state that the court had the commissioner had completely abandoned his role in advising the court with regard to the motor vehicle financial responsibility. Yes, but in SACIT 2, the Supreme Court specifically invited the commissioner to file an amicus. Right. And he did so. And they listened to it. But subsequent to that, they didn't. Counsel, we know where commissioners come from. They tend to come from people who have experience in the insurance business. That's understandable. Right. Okay. But as Judge Smith said, they invited him. They wanted his input. And they took it. And that's how we have SACIT 2. And SACIT 2 is very specific. It protects the insurance companies for the policy period. We are into the next policy period. The Supreme Court did not intend to protect the insurance company beyond the first policy period. Thank you very much. Thank you very much. I thought you reserved some time. I'm sorry. You reserved some time. Yes, I did, Your Honor. I'd just like to address that last red herring argument about the policy period. The language that counsel pointed to, which I'll quote again, to the degree that coverage under a particular after-acquired vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent, such as notice and the payment of premiums, we clarify SACIT 1. What is that language doing? That's not limiting its holding to an existing policy period. You have to look at this in context. What that language is doing is contrasting and comparing those two different kinds of after-acquired vehicle clause. The kind that limits the coverage under an after-acquired vehicle clause to a very finite term of 14 to 30 days of the days that they mention here, or the kind that extends it to an existing policy period. And if you have the kind that extends it to the existing policy period, you don't need a new waiver. That's what they're saying. And that's an old trick to take the words out of context and give it a gloss that you want, and that's legitimate. But if you accept that argument, then you're eviscerating SACIT 2, because then you need serial waivers, which the commissioner said, please don't make us do that. And the court agreed. They're not going to make them do that. Thank you. Thank you, counsel. Thank you. Again, also for a very fine argument. We'll take the matter under advisement. Thank you. I'm going to say thank you both. Thank all three of you.